Hillsborough-northern judicial district
No. 98-254

### THE STATE OF NEW HAMPSHIRE

v.

### RICHARD CROMLISH

April 13, 2001

*Philip T. McLaughlin*, attorney general (*Patrick E. Donovan*, assistant attorney general, and *Joseph N. Laplante*, senior assistant attorney general, on the brief, and *Mr. Donovan* orally), for the State.

*Twomey & Sisti Law Offices*, of Chichester (*Jonathan R. Saxe* on the brief and orally), for the defendant.

HORTON, J., retired, specially assigned under RSA 490:3. The defendant, Richard Cromlish, was convicted after a jury trial in Superior Court (*Lynn*, J.) of second degree murder. *See* RSA 630:1-b, I(a) (1996). On appeal, the defendant contends the trial court erred in denying him the ability to retain and call an expert witness at trial. We affirm.

Based on the evidence adduced at trial, the jury could have found the following facts. The defendant was working as a taxi cab driver and went to pick up a night-time fare on February 14, 1997, at a Manchester club. Shortly after the defendant arrived, the victim and the defendant had a physical altercation relating to whether the victim could smoke in the taxi. After this confrontation, the victim told the defendant to call another taxi to pick him up. Both then entered the taxi, with the victim sitting in the front passenger seat, and the defendant radioed for another taxi. After a brief period, the victim told the defendant to get out of the taxi, and both people began to do so. Once the victim had left the vehicle, the defendant, rather than leave the taxi, attempted to drive away. The victim, seeing the taxi departing, ran after it and dove headfirst into the front passenger seat to retrieve his pool cue. The defendant then pulled out his handgun and shot the victim eight times. The defendant fired three shots while in the taxi, and five more after exiting the still-moving taxi and shooting through the driver's door window. The eight shots emptied the defendant's gun of all ammunition and killed the victim. The defendant was indicted for second degree murder.

Prior to trial, the court issued a scheduling order establishing November 3, 1997, as the date for jury selection. On June 7, the parties entered into a court-approved discovery agreement that required that the identity, reports and qualifications of all expert witnesses be disclosed by September 3. On October 1, the court summoned the jury venire for jury selection on November 5.

On October 6, the defendant filed a motion for services other than counsel to retain an expert to evaluate the physical and forensic evidence. The court granted the motion even though the request came after the September 3 deadline. On October 16, the court delayed the start of trial, but not jury selection, until November 24 to accommodate the availability of one of the defendant's experts.

On November 5, the date of jury selection, the defendant filed an additional motion for services other than counsel, seeking funds to retain a firearms training expert to testify about perception and memory in high-stress fear situations, particularly regarding a shooter's awareness of the number of shots fired. The defendant did

not seek a continuance in conjunction with his motion. The expert had been referred to the defendant by Captain John Clark, a captain at the Police Standards and Training Council and an instructor at the New Hampshire Police Academy, who had told the defendant that he himself was unwilling and unable to be retained as an expert witness by the defendant's counsel, the public defender. On Friday, November 7, the defendant subpoenaed Captain Clark to appear at a pretrial motions hearing set for Monday, November 10. The defendant sought substantially the same testimony from Captain Clark as he proposed to offer through the firearms training expert. The State objected to the defendant's motion for services other than counsel and moved to quash the subpoena. The trial court denied the defendant's motion for services other than counsel and granted the State's motion to quash.

On appeal, the defendant contends that the court abused its discretion when it denied the motion for services other than counsel as untimely and when it found that the proposed testimony of the firearms training expert was unnecessary and did not meet the requirements of New Hampshire Rule of Evidence 702. The defendant further argues that the exclusion of the proposed testimony violated his rights under the State and Federal Constitutions. N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI, XIV.

We first consider whether the trial court abused its discretion when it denied the defendant's November 5 motion as untimely. The defendant argues the trial court abused its discretion given: (1) the seriousness of the charges against him; (2) the option of continuing the case; (3) the minimal prejudice to the State; and (4) the importance of the proposed evidence.

We have long recognized that justice is best served by a system that reduces surprise at trial by giving both parties the maximum amount of information. *See State v. Nadeau*, 126 N.H. 120, 124 (1985). The discovery of truth in criminal proceedings should not suffer by an overly technical application of a scheduling order or the rules of court. *See State v. Paris*, 137 N.H. 322, 330 (1993). These considerations, however, do not deprive a trial court of the discretion to refuse to admit evidence for a defendant's unexcused failure to meet clear and reasonable deadlines. *See Taylor v. Illinois*, 484 U.S. 400, 411 (1988).

In general, the admissibility of evidence is within the trial court's sound discretion. We will not reverse the trial court's ruling unless it constitutes an abuse of discretion. *Nadeau*, 126 N.H. at 124. The same standard applies to the review of a discovery sanction. *State v. Cotell*, 143 N.H. 275, 279 (1998). To show an abuse of discretion, the

"defendant must demonstrate that the trial court's decision was clearly unreasonable and that the decision prejudiced his case." *State v. Dodier*, 135 N.H. 134, 142 (1991). In determining whether evidence should be excluded for a violation of discovery rules, the trial court may consider several factors, including: whether the violating party made a good faith effort to comply or provided a pre-trial warning to minimize surprise, *see Nadeau*, 126 N.H. at 124-25; the ability of the court to limit the scope of testimony or evidence to minimize surprise, *see id.* at 124; and the availability of lesser sanctions or procedural curative measures, *see Cotell*, 143 N.H. at 280.

The defendant contends that given the serious nature of the charge against him, his November 5 request for an expert should have been granted as "[t]he [S]tate would not have been prejudiced if a continuance had been granted." He further argues that "[t]o allow the State to succeed in arguing that [Captain] Clark's subpoena should be quashed because the defense could get the same testimony through another witness[], a witness whom the [S]tate had provided, and then prevent the defense from calling that witness is clearly unfair." The defendant further asserts that the proposed "evidence was not only important to a defense of self-defense, it was also perhaps even more important evidence for the jury to consider in deciding whether [the defendant] was guilty of the lesser offenses of manslaughter or negligent homicide."

In a lengthy order denying the defendant's motion, the trial court found that the motion was "grossly out of time," the court had granted a similar untimely motion filed by the defendant a month earlier for a forensics expert, and the court had already granted one continuance at the request of the defendant to accommodate an expert witness after notices were sent summoning the jury venire. The trial court further found that the proposed expert testimony was entirely different from previously requested expert testimony, and that the timing of the defendant's motion would prejudice the State or delay a jury trial in which the jurors were already chosen. In examining the substance of the proposed expert testimony, the court found that it was not crucial to the defense, and that the nature of the proposed testimony was such that the defendant should have been aware of the need for it months prior to his request. Furthermore, a review of the defendant's trial court pleadings and argument indicates that he offered the trial court no explanation for the timing of the motion or for the newly recognized need for the expert testimony, and he did not request a continuance of the trial.

■ The State has a strong interest in assuring the orderly administration of justice. *See Perry v. Rushen*, 713 F.2d 1447, 1451-52 (9th Cir. 1983). This interest requires courts to balance the fairness of granting untimely requests for expert testimony against the disruption such requests have on the court system. This policy is expressed in Superior Court Rule 98, which allows for sanctions, including the exclusion of evidence, for violating discovery rules.

■ In this case, the jury venire was convened, and the date of trial was fixed at the time the defendant filed his motion on November 5. Any further delay would have required the court to repeat the work necessary to call up and choose another jury as well as adjust its calendar to accommodate the continuance. Furthermore, a continuance on the eve of trial would have required the State and local law enforcement authorities to commit additional resources to repeat trial preparation at a later date. Additionally, the burden on these resources if such last minute continuances were routinely granted would hamper the State's overall ability to pursue the orderly administration of justice. The trial court also properly considered the defendant's lack of excuse for the late timing of his request. In light of these considerations, the court properly declined to order a continuance to accommodate the motion for services other than counsel.

■ The defendant next contends that the State's attempt both to quash the subpoena of Captain Clark and to bar the defendant's use of the firearms training expert referred by Captain Clark was unfair. The defendant also argues that the two weeks between the motions hearing on November 10 and the start of trial on November 24 was sufficient for the State to prepare adequately because it was familiar with the proposed witness and had ready access to Captain Clark for its own use. These arguments presume that the prosecution would prepare for and rebut the defendant's proposed expert with a firearms training expert such as Captain Clark. Allowing the defendant to call his expert to testify without continuing the trial would have placed the prosecution in the position of limiting its rebuttal to an available firearms training expert or scrambling to find an available expert of its own choosing. Discovery deadlines are designed to avoid this situation, and placing the prosecution in this position would have been both unfair and prejudicial. *See Taylor*, 484 U.S. at 411-12 (discovery rules are designed to avoid judgments based on partial or speculative facts that could result from eleventh hour defenses). Therefore, the trial court's finding that the prosecution would not have had sufficient time to depose the defendant's

proposed witness and obtain its own rebuttal witness was not clearly unreasonable.

■ The defendant next argues that the mitigating nature of the proposed evidence would have significantly enhanced the defendant's self-defense argument and would have assisted the jury in its consideration of lesser offenses. The trial court pointed out that the last minute nature of the defendant's request, combined with the lack of explanation as to why the need for the testimony only became apparent at the time of the motion, undermined the defendant's assertion that the evidence was critically important. We agree. We also note that even if this evidence was of critical importance to the defendant's case, the last minute attempt to interject it into the trial raises the concern that the delay was a tactic to keep the prosecution from effectively preparing for the evidence at trial. Accordingly, we conclude that the trial court's decision to deny the defendant's motion as untimely was not clearly unreasonable.

Because a trial court properly exercising its discretion under our evidentiary rules could nevertheless violate a defendant's constitutional rights, we conduct a separate constitutional analysis of the trial court's exercise of discretion. *See State v. Cook*, 135 N.H. 655, 660-61 (1992); *Fendler v. Goldsmith*, 728 F.2d 1181, 1188 (9th Cir. 1984). Since the Federal Constitution does not provide greater protection in this area than Part I, Article 15 of the New Hampshire Constitution, we decide this issue exclusively under the State Constitution using federal cases solely as analytical aids. *See Cook*, 135 N.H. at 660-61; *State v. Ball*, 124 N.H. 226, 231-33 (1983).

■ A defendant's right to seek out and present witnesses on his behalf is a fundamental due process right. *Washington v. Texas*, 388 U.S. 14, 19 (1967). The right to present witness testimony, however, is dependent entirely on the defendant's affirmative exercise of that right. *Taylor*, 484 U.S. at 410. As such, the defendant, either through action or inaction, may waive his right to present witness testimony under Part I, Article 15 of the New Hampshire Constitution. *See State v. Lister*, 119 N.H. 713, 716 (1979); *Taylor*, 484 U.S. at 417-18.

■ When considering excluding or limiting evidence offered under Part I, Article 15 of the New Hampshire Constitution as a discovery sanction, the trial court should consider such factors as the probative value and reliability of the proposed evidence, the effectiveness of less severe sanctions, the integrity of the adversary process, the interest in the fair and efficient administration of

justice, and the potential prejudice to the truth-determining function of the trial process. *See Taylor*, 484 U.S. at 414-15 & n.19. "The judge should also factor into the mix the nature of the explanation given for the party's failure seasonably to abide by the discovery [rule], the willfulness *vel non* of the violation, the relative simplicity of compliance, and whether or not some unfair tactical advantage has been sought." *Chappee v. Vose*, 843 F.2d 25, 29 (1st Cir. 1988).

The defendant offered the testimony of his firearms training expert to explain how the firing of eight shots might "be evaluated as a single, continuing event." In doing so, the defendant sought an explanation on:

> counterintuitive facts that are directly relevant to [the defendant's] defense:
>
> a) High-stress fear situations provoke a variety of physiological responses (the "fight or flight" reflex) that affect perception and memory.
>
> b) Trained police officers and private citizens typically have difficulty remembering the number of shots fired during a stressful encounter.

The defendant supported the counterintuitive nature of these facts by comparing an example of a police officer failing to remember how many shots he fired in a life-threatening situation with the deposition testimony of a police officer who had never taken such action stating he would remember the number of shots he would have fired under life-threatening circumstances.

The defendant contends his proposed expert "is an internationally recognized firearms training expert who has experience training both civilians and law enforcement officials." The expert's background includes working as a police officer, training police officers, training civilians, and running an organization that provides instruction on the "judicious use of deadly force" for 800 to 1200 people a year. Additionally, the proposed expert has authored articles on firearms training and is cited in numerous articles as an expert in firearms training.

In assessing the probative value of the proposed expert testimony, the trial court found that the "testimony would not be helpful to the jury because the [e]ffect of stress on the ability to perceive and recall is not a matter beyond the competence of lay jurors." The court explained that the issues raised by the defendant were not counterintuitive as "a jury of lay persons should have no difficulty grasping the concept that a person faced with a sudden threat, who

is in fear of his life and who must act quickly to save himself from grave harm, may not remember all of the details of the events which produced such reactions." We agree that whether the defendant could remember the details of the shooting was not an issue beyond the ability of the jury to perceive and understand without the aid of the proposed expert witness; therefore, the proposed testimony on this subject was of low probative value.

The defendant also sought testimony on physiological responses altering perception during high-stress, life-threatening encounters. While expert testimony on this subject might have been more probative than testimony on memory, the defendant clearly indicated at the November 10 motions hearing that his proposed expert would limit his testimony to his area of expertise. The record indicates that the proposed witness was a firearms training expert without any apparent training or experience in any field that might provide a basis for offering an opinion on physiological responses that alter perceptions during life-threatening encounters. Therefore, the defendant's expert was not qualified to provide testimony on this subject as part of the defendant's November 5 motion for services other than counsel.

We next consider the effectiveness of a less severe sanction, the impact on the adversary process, and the interest in a fair and efficient administration of justice. The trial court could have assessed sanctions that would not have excluded the proposed testimony. For example, the court could have ordered a continuance, issued a contempt order, levied a fine and/or instituted disciplinary action. In considering its course of action, the court found that if it allowed the proposed testimony the State would be unfairly prejudiced or the trial would have to be continued. That finding was not clearly unreasonable under the circumstances of this case. Allowing the trial to proceed with the defendant's proposed expert testimony may have prejudiced the prosecution and thereby interfered with the integrity of the adversary process and the fair administration of justice. A last minute continuance could have interfered with an already heavily burdened trial docket and resulted in repeating the work necessary to call and select a new jury. Because a continuance, even if combined with another sanction, would have resulted in harm to the judicial process, we agree with the trial court that a lesser sanction would not have been as effective.

We next consider the remaining factors. The trial court found that the defendant offered no explanation for violating the discovery

deadlines and noted that the defendant could easily have sought this kind of testimony in a timely manner. The court made no ruling on the willfulness of the violation in this case. Although the combination of the lack of explanation and the untimely attempt to offer additional evidence may be presumed by the trial judge as an attempt to gain an unfair advantage at trial, *see Taylor*, 484 U.S. at 414, without such a finding by the trial court, we will presume that the defendant acted without an intent to violate the discovery order or to seek an unfair advantage at trial.

██ We conclude that the court's order precluding testimony from the defendant's proposed firearms training expert did not violate the defendant's rights under the State Constitution. The low probative value of the proposed testimony indicates that its absence at trial did not deny the defendant the ability to present an issue at trial. In addition, the defendant's unexplained delay in requesting the proposed testimony would have resulted in either prejudicing the prosecution or interfering with the efficient administration of justice.

Because we affirm the decision of the trial court based on the timeliness issue, we decline to address whether the proposed testimony met the requirements for admissibility under New Hampshire Rule of Evidence 702.

*Affirmed.*

JOHNSON, J., sat for oral argument but retired prior to the final vote; BROCK, C.J., and BRODERICK, J., concurred.