Rockingham
No. 2009-532

THE STATE OF NEW HAMPSHIRE

v.

JANE READER

Argued: June 23, 2010
Opinion Issued: September 17, 2010

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Buchanan, Maynard & Parodi, PLLC*, of Nashua (*Steven L. Maynard* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, Jane Reader, was convicted of two counts of simple assault and one count of resisting arrest/detention, *see* RSA 631:2-a, 642:2 (2007), following a jury trial in the Superior Court (*McHugh*, J.). On appeal, the defendant argues that the trial court erred when it excluded witness testimony based upon its finding that she committed a discovery violation. We affirm.

The jury could have found the following. In May 2006, the defendant lived with Richard MacDonald in Garden Meadows, a condominium complex in Derry. Residents of Garden Meadows had parking stickers for their cars. A towing company removed cars without stickers from the complex's parking lot. On the evening of May 19, the defendant and MacDonald watched a Red Sox doubleheader at their home with Dayna Brandano, Dina Enser, Adam Vinacombe, and Vinacombe's girlfriend. At approximately 3:00 a.m., tow truck operator Ryan Crete drove into the parking lot and began to tow Enser's car. Enser and Brandano went outside to speak to Crete. Crete told them that he would release the car if they paid the towing fee, but neither Enser nor Brandano had any money.

The defendant, MacDonald, and Vinacombe arrived on the scene, and the defendant angrily demanded that Crete release Enser's car. Tensions began to rise, and Crete returned to his truck and called the Derry Police.

Shortly thereafter, Officer Steven Clark of the Derry police arrived, and spoke with the group. They were irate, and crowded Clark against his cruiser. Most of the people, including the defendant, appeared to be intoxicated.

Sergeant Peter Morelli and Officer Robert Moore, also of the Derry police, arrived. Morelli told Clark to move his cruiser so that Crete could leave with his truck. MacDonald stood in front of Crete's truck, and commented "about being a firefighter and how many cops does it take to tow a car." Crete stated that "[MacDonald] said he's not moving. I'm going to have to run him over if I want to leave." The defendant joined MacDonald in front of the tow truck.

Moore approached the defendant and repeatedly asked her to leave, but she refused. Moore then took her by the arm and started to move her away. The defendant pulled away from Moore and said, "You can't f------ touch me. I'm a girl. You touch me again and I'll spit in your face, you f------ pig." The defendant began flailing her arms, and Moore used an "arm bar take down maneuver" to bring her to the ground. The defendant landed on her back. She kicked Moore in the groin, and spit into his left eye. After a struggle, the defendant was arrested.

The defendant testified that when she went outside to talk to Crete, he was "highly disagreeable and very argumentative." She denied blocking the tow truck, and testified instead that she was walking toward MacDonald and intended to continue walking to her apartment. She denied that Moore had said anything to her before he grabbed her arm, and testified that once he grabbed her she pulled away and told him not to touch her. She continued to walk toward MacDonald, and Moore threw her to the ground without warning, knocking the wind out of her. She denied intentionally spitting at, or kicking, Moore. She stated that she did not tell Moore that she would spit on him, and also denied cursing at, or insulting, any of the officers. Brandano testified that she saw an officer throw the defendant down, and that the defendant cried and said that he was hurting her and asked him not to hurt her. Brandano also testified that the defendant was not intoxicated.

At the close of the State's case, the trial court precluded Vinacombe, Enser, MacDonald, and two residents of Garden Meadows from testifying because the defendant had failed to provide the State with summaries of their expected testimony.

On appeal, the defendant argues that the trial court unsustainably exercised its discretion by excluding this testimony. This issue first arose when, several days before trial, the State moved *in limine* to exclude the testimony of defense witnesses because the defendant had failed to disclose witness statements, contrary to an order by the Trial Court (*Nadeau*, J.)

and Superior Court Rule 98. Following the close of the State's case, the trial court held a hearing on the State's motion *in limine*. The court summarized its understanding of the procedural status of the motion as follows:

> Judge Nadeau indicated that to the extent that any of these other five folks would be allowed to testify, it would be incumbent upon Defense Counsel to obtain either a statement from them as to what their testimony would consist of, or Defense Counsel could summarize the substance of that — their anticipated testimony and get that to the State prior to trial. And if that didn't happen, then those witnesses would, in fact, not be permitted to testify.

Counsel for the defendant argued that the witness testimony should not be excluded because "there were no statements generated by these witnesses . . . that fit within [Superior Court Rule 98] that would require production." Counsel then made a proffer as to the proposed testimony: MacDonald, Vinacombe and Enser would testify about what they saw on the night in question, and two residents of Garden Meadows would testify that they were inside their home, heard a noise and looked outside, and then would testify about what they saw. Finally, counsel argued that if sanctions were to be imposed, the court should fine him, order that the State may depose the witnesses in question, or grant a continuance. The trial court, however, granted the State's motion *in limine*.

In general, we accord considerable deference to the trial court's ruling on a discovery sanction, and intervene only when it constitutes an unsustainable exercise of discretion. *State v. Belton*, 150 N.H. 741, 745, *cert. denied*, 543 U.S. 1028 (2004). To show that the trial court unsustainably exercised its discretion, the defendant must demonstrate that the court's decision was clearly unreasonable and prejudiced her case. *Id.*

> In determining whether evidence should be excluded for a violation of discovery rules, the trial court may consider several factors, including: whether the violating party made a good faith effort to comply or provided a pre-trial warning to minimize surprise; the ability of the court to limit the scope of testimony or evidence to minimize surprise; and the availability of lesser sanctions or procedural curative measures.

*Id.*

The purpose of Rule 98 is, as noted by the trial court, to avoid a trial by ambush. "We have long recognized that justice is best served by a system that reduces surprise at trial by giving both parties the maximum amount of information." *State v. Cromlish*, 146 N.H. 277, 280 (2001); *see*

*State v. Nadeau*, 126 N.H. 120, 124 (1985). Thus, although "[t]he discovery of truth in criminal proceedings should not suffer by an overly technical application of a scheduling order or the rules of court," the trial court retains the "discretion to refuse to admit evidence for a defendant's unexcused failure to meet clear and reasonable deadlines." *Cromlish*, 146 N.H. at 280; *see also Taylor v. Illinois*, 484 U.S. 400, 410-11 (1988) ("The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case.").

Superior Court Rule 98(C)(2) requires the defendant to provide the State with a witness list and statements of all witnesses the defendant intends to call at trial. The defendant must do so "[n]ot later than the final pretrial conference or ten (10) calendar days before jury selection, whichever occurs first." SUPER. CT. R. 98(C)(2). Rule 98(C)(3) defines a "statement" as:

> (i) a written statement signed or otherwise adopted or approved by the witness; (ii) a stenographic, mechanical, electrical or other recording, or a transcript thereof, which is a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of such oral statement; and (iii) the substance of an oral statement made by the witness and memorialized or summarized within any notes, reports or other writings or recordings, except that, in the case of notes personally prepared by the attorney representing the state or the defendant at trial, such notes do not constitute a 'statement' unless they have been adopted or approved by the witness or by a third person who was present when the oral statement memorialized or summarized within the notes was made.

The trial court may sanction a party for failure to comply with Rule 98 at any time during the proceedings. SUPER. CT. R. 98(J). The trial court "may take such action as it deems just under the circumstances, including but not limited to . . . prohibiting the party from introducing the evidence not disclosed." *Id.*

Although, in her brief, the defendant appears to contest that she committed a discovery violation, at oral argument, counsel for the defendant conceded that she had. We, therefore, assume without deciding that the defendant violated Rule 98. With respect to the sanction imposed by the trial court, the defendant argues that the court failed to "properly evaluate whether or not a discovery violation occurred, whether or not the State was substantially prejudiced, and . . . whether or not a curative measure short

of exclusion of witnesses was available." The defendant argues that the witnesses would have offered "direct and material testimony" concerning the confrontation in the parking lot, and that the testimony would have shed light on whether her actions were criminal "or responsive to improper and illegal use of excessive force against her." The defendant also contends that the State failed to demonstrate that the lack of witness statements prejudiced its preparations for trial.

The State counters that the trial court was within its discretion to exclude the testimony because: (1) "the defendant was unwilling to agree to any curative measure that would minimize surprise"; and (2) the State's eyewitness testimony presented few inconsistencies so that, to the extent that any of the proposed defense witnesses contradicted this testimony, the State would not have a meaningful opportunity to investigate and probe it.

■ We cannot conclude that the trial court unsustainably exercised its discretion when it excluded the testimony of MacDonald, Vinacombe, Enser, and the two residents of Garden Meadows. In violation of the trial court's order and, as the defendant has conceded, in violation of Rule 98, the defendant failed to provide the statements of these witnesses. Even at the eleventh hour, at the close of the State's case, counsel for the defendant failed to describe the substance of the testimony at issue or explain how it would differ from the testimony presented by the State; he stated only that the witnesses would testify about "what [they] saw occur with respect to [the defendant] that night." The defendant failed to make "a good faith effort to comply" with the trial court's order and with Rule 98, or to provide "a pre-trial warning to minimize surprise." *Belton,* 150 N.H. at 745.

The defendant argues that the trial court should have imposed lesser sanctions. We disagree. The State filed its motion *in limine* prior to trial. At jury selection, the State again sought to exclude the testimony of witnesses for which the defendant had failed to provide summaries; the defendant asked the trial court to "flush this out later." Finally, at the close of the State's case, the court held a hearing on the matter. At this point, some lesser sanctions were not available to the court, as the court lacked the ability to limit the scope of the testimony to minimize the surprise to the State. *See id.* Given the defendant's intransigence, delay, and failure to provide more detailed information about the testimony at issue, the defendant has failed to demonstrate that the court's decision to exclude the witness testimony was clearly unreasonable. *See id.*

The defendant also argues that the trial court's order violated her rights under Part I, Article 15 of the New Hampshire Constitution. We decline to

address this argument because the defendant has failed to adequately brief this issue for our review. *See In re Kotey M.*, 158 N.H. 358, 362 (2009).

*Affirmed.*

BRODERICK, C.J., and DALIANIS, HICKS and CONBOY, JJ., concurred.