NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Grafton
No. 2014-0528

THE STATE OF NEW HAMPSHIRE

v.

ALBERT J. BOUTIN, III

Argued: October 14, 2015
Opinion Issued: March 8, 2016

Joseph A. Foster, attorney general (Jason A. Casey on the brief and orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Albert J. Boutin, III, appeals his conviction, following a jury trial in Superior Court (MacLeod, J.), on one count of misdemeanor possession of marijuana. See RSA 318-B:2, I (2011). We affirm.

The jury could have found the following facts. On July 26, 2013, State Trooper McCarthy and Corporal Magoon of the Woodstock Police Department went to the defendant's residence to execute a warrant for his arrest and a warrant to search the premises for ammunition that the defendant was required to relinquish pursuant to a domestic violence order. A young girl,

later identified as the defendant's daughter, answered the door and summoned the defendant from a back bedroom. The defendant was arrested without incident, and the police then began to search the residence. McCarthy testified that "there was an overwhelming odor of marijuana as soon as you walked into the apartment." He discovered that the source of the odor was the back bedroom from which the defendant had previously emerged. Inside the bedroom, McCarthy found, among other things, a substance that he believed to be marijuana. McCarthy photographed areas of the room before seizing certain items, including the suspected marijuana.

The defendant was charged with, among other things, possession of marijuana, and was tried before a jury. At trial, the State did not produce the marijuana seized from the defendant's apartment, but rather relied upon photographs and other documentary evidence, and the testimony of the police and the state laboratory worker who analyzed a sample of the seized marijuana.

After the State rested its case, the defendant moved to dismiss the charge for possession of marijuana, arguing that "the state hasn't proven a prima facie case because there is no marijuana . . . in evidence." The trial court denied the motion. The defendant again moved to dismiss at the close of his case, and the trial court again denied the motion. The defendant was convicted of possession of marijuana and now appeals.

On appeal, the defendant argues that the trial court erred in: (1) allowing a laboratory analyst to testify about a substance that was not introduced at trial; and (2) failing to dismiss the marijuana charge for insufficiency of the evidence. We first address the defendant's argument that the trial court erroneously allowed the State's analyst to testify about the substance alleged to be marijuana. He argues that "because the State failed to introduce the substance alleged to be marijuana into evidence, the evidence was not sufficient to support a finding that the substance tested by the analyst was the substance seized from [his] apartment."

The State's analyst, Patrick Keough, a Criminalist II at the state police forensic laboratory, testified as an expert in the identification and analysis of controlled drugs. "The admission or exclusion of expert testimony is within the trial court's sound discretion." Laramie v. Stone, 160 N.H. 419, 429 (2010). "We review the trial court's decision for an unsustainable exercise of discretion." Id.

"One of the most important prerequisites for the admission of the results of chemical tests for [drugs] is that the specimen analyzed shall be traced to the accused." State v. Reenstierna, 101 N.H. 286, 287 (1958) (challenging admission of result of blood alcohol test in prosecution for driving under influence of intoxicating liquor). "The State is required to establish the

essential links in the chain of evidence relied on to identify the [specimen] analyzed as being the [evidence] taken from the accused." Id. at 288.

Here, McCarthy testified that, after he seized evidence, including the marijuana, from the defendant's residence, he assigned each piece of evidence an identifier consisting of his initials — SAM — and a number. He then filled out an evidence examination request form, which instructs the laboratory whether to test or hold certain evidence, and secured the evidence in the evidence locker at the troop station. The evidence request form, which was entered as an exhibit, identified evidence sample SAM-3 as "Baggie marijuana, straw, plastic container, rolling papers, [and] 'scraper,'" and instructed the laboratory to test the evidence for marijuana.

Detective Sergeant Belanger of the state police testified that he transported the evidence in this case from the evidence locker to the state laboratory, having it in his possession the entire time. He also testified that he signed the evidence request form accordingly.

Keough testified that at the time the evidence was taken into the laboratory it was assigned a laboratory number, which is used to track evidence within the laboratory. That number is entered into the laboratory's evidence tracking system, and "logged to a particular location in the laboratory," which, "[is] a secure vault for the holding of evidence until it's analyz[ed]." Keough testified that he retrieved the evidence in this case from the evidence locker and analyzed it. He testified that he examined the packaging of SAM-3 and determined that it was properly sealed. He performed a number of tests and concluded that the vegetative matter inside the packaging was marijuana. Thereafter, he logged the evidence back into the main evidence vault.

The defendant cites our observation that "[g]aps in a chain of custody are most significant where the contested evidence is fungible, and not readily distinguishable by a unique feature or other identifying mark." State v. Moscillo, 139 N.H. 79, 81 (1994). We noted in Moscillo that "[g]enerally, drug evidence is fungible." Id. The defendant contends that distinguishability of the evidence here was further diminished by McCarthy's use of his initials to identify the evidence, a practice the defendant contends McCarthy "likely" used on drug evidence in other investigations.

Nevertheless, "gaps in the chain [of custody] affect only the weight to be accorded proffered evidence," particularly when "the defendant produces no evidence of alteration or other foul play." Id. The defendant contends that, although this rule might be warranted if the State had introduced the alleged marijuana or if the substance had, without the fault of the State, been lost or destroyed prior to trial, it should not apply when the State provides neither the substance nor "any reasonable explanation for [its] absence." The defendant

3

suggests no legal basis for this distinction, and we can find none. We conclude that the State presented sufficient chain of custody evidence to allow its analyst to testify and, accordingly, we find that the trial court did not unsustainably exercise its discretion in admitting the analyst's testimony.

We now turn to the defendant's sufficiency of the evidence challenge. "A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo." State v. Collyns, 166 N.H. 514, 517 (2014). "In reviewing a sufficiency of the evidence claim, we view the evidence presented at trial, and all reasonable inferences drawn therefrom, in the light most favorable to the State and uphold the jury's verdict unless no rational trier of fact could have found guilt beyond a reasonable doubt." State v. Graham, 142 N.H. 357, 360 (1997) (citation omitted). "The defendant bears the burden of demonstrating that the evidence was insufficient to prove guilt." Id.

The defendant argues that without the substance alleged to be marijuana in evidence at trial, "no reasonable factfinder, even viewing the evidence in the light most favorable to the State, could have found that the substance was marijuana." The State counters that "the defendant's argument is against the weight of an overwhelming amount of legal authority holding that substantive drug charges may be proven beyond a reasonable doubt without admitting the actual drugs into evidence during trial, or even subjecting the drugs to forensic analysis." The State cites, for example, United States v. Agueci, 310 F.2d 817 (2d Cir. 1962), in which the court held, with respect to the federal narcotics laws:

> [T]he jury must be convinced beyond a reasonable doubt that the substance imported[,] sold, concealed, or adulterated was in fact a narcotic drug. . . . But it is not necessary that [this element] be proved by direct evidence. Just as with any other component of the crime, the existence of and dealing with narcotics may be proved by circumstantial evidence; there need be no sample placed before the jury, nor need there be testimony by qualified chemists as long as the evidence furnished ground for inferring that the material in question was narcotics.

Agueci, 310 F.2d at 828.

Among the reasons given for this rule is that "[i]llegal drugs will often be unavailable for scientific analysis because their nature is to be consumed." United States v. Schrock, 855 F.2d 327, 334 (6th Cir. 1988). Thus, "courts have held that the government may establish the identity of a drug through cumulative circumstantial evidence." Id.

4

The defendant cites this justification as a distinguishing factor between cases in which "circumstances outside the State's control — such as the defendant's dispossession of the substance prior to its seizure or the complete consumption of the substance during testing" — and this case, in which, he alleges, "the prosecution is able to introduce the substance at issue, but simply chooses not to."  We are not persuaded.  In Schrock, upon which the defendant relies in part, the court noted that the rule is not only justified by "the limitations that [the] burden [of requiring scientific identification] would place on prosecutors," but that it also accords "with general evidentiary principles." Id.  These principles, as alluded to in Agueci, 310 F.2d at 828, establish that "[a]lthough the State must establish guilt beyond a reasonable doubt on all the essential elements [of the charged offense], it may rely on circumstantial, rather than direct, evidence."  State v. Noel, 119 N.H. 522, 527 (1979) (quotation omitted).  We see no reason why this rule should not apply to proof that a substance is a controlled drug.  Thus, even if the only evidence the State produced at trial had been circumstantial, introduction of the actual substance seized from the defendant's residence would not have been necessary to prove the substance was marijuana.  See, e.g., United States v. Kelly, 14 F.3d 1169, 1174 (7th Cir. 1994) ("A narcotics violation need not be proved by direct evidence; there is no need for a sample of the narcotics seized to be placed before the jury.").

Here, however, the State's evidence was not solely circumstantial.  The State produced direct evidence through Keough that the substance he tested was marijuana.  See Wallace v. State, 215 S.E.2d 703, 705 (Ga. Ct. App. 1975) (holding that expert's testimony that powder tested by crime laboratory "contained cocaine was direct, not circumstantial" evidence); cf. State v. Kelley, 159 N.H. 449, 454 (2009) (noting that "chemical evidence does not constitute the sole form of direct evidence of [alcohol] impairment").  In addition, as discussed above, the State presented sufficient chain of custody evidence for a rational jury to conclude that the substance tested by Keough was the same substance seized from the defendant's apartment.  Accordingly, we conclude that there was sufficient evidence for the jury to find the defendant guilty of possession of marijuana.

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.