# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

## In Case No. 2020-0124, State of New Hampshire v. Roney R. White, the court on May 3, 2021, issued the following order:

Having considered the parties' briefs and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. See Sup. Ct. R. 18(1). Following a six-day jury trial in Superior Court (Messer, J.), the defendant was convicted of: (1) second degree assault (extreme indifference), see RSA 631:2, I(c) (2016); (2) second degree assault (strangulation), see RSA 631:2, I(f) (2016); (3) criminal restraint, see RSA 633:2 (2016); (4) witness tampering, see RSA 641:5 (2016); (5) domestic violence, see RSA 631:2-b (Supp. 2020); and (6) resisting arrest, see RSA 642:2 (2016). He appeals his conviction for second degree assault (extreme indifference). We affirm.

The second degree assault (extreme indifference) indictment alleged that the defendant "recklessly caused bodily injury to [the victim], an intimate partner, under circumstances manifesting extreme indifference to the value of human life, when he struck [her] in the face and body several times with an open and closed fist and threw her around the bathroom." On appeal, the defendant argues that the evidence was insufficient for the jury to have found, beyond a reasonable doubt, that he acted with extreme indifference to the value of human life.

A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo. State v. Boutin, 168 N.H. 623, 627 (2016). In reviewing a sufficiency of the evidence claim, we view the evidence presented at trial, and all reasonable inferences drawn therefrom, in the light most favorable to the State and uphold the jury's guilty finding unless no rational trier of fact could have found guilt beyond a reasonable doubt. See id. Reviewing the record in the light most favorable to the State "involves resolving issues of credibility in the State's favor." State v. Woodbury, 172 N.H. 358, 364 (2019). The defendant bears the burden of demonstrating that the evidence was insufficient to prove guilt. Boutin, 168 N.H. at 627.

"Whether a defendant acted with 'extreme indifference' is a question of fact for the jury." State v. Fischer, 165 N.H. 760, 713 (2013). "[A]n attacker acts with 'extreme indifference' when he inflicts any degree of bodily injury on a victim and . . . the circumstances of the attack demonstrate a blatant disregard for the risk to the victim's life." Id. (quotation omitted). "The injuries, however, need not themselves be life-threatening." Id.

Viewing the evidence and all reasonable inferences in the light most favorable to the State, we conclude that it was sufficient for a rational trier of fact to have found, beyond a reasonable doubt, that the defendant acted with extreme indifference to the value of human life.  The victim testified that, while she stood naked and wet in the shower, the defendant opened the shower curtain and punched her in the face so hard that she hit the bathroom wall.  When the victim stood back up, "he punched [her] again" on the side of the face, causing her nose to bleed.  After the second punch, the victim "started slipping."  The defendant stopped the victim's fall by "grabb[ing] [her] by her hair" and pulling her out of the shower.  He then threw her around by her hair, causing her body, hip, and arms to hit the toilet, sink, and wall.  The victim was unable to remain standing because her body was wet, and the defendant "was throwing [her] around so fast."

The victim ended up lying face up under the bathroom sink.  The defendant then climbed on top her, grabbed her again by the hair, and dragged her out of the bathroom, across the rug, to one of the beds in the hotel room.  Once the victim was on the bed, the defendant punched her again.  She moved over to the other bed in the room, and the defendant "got on top of [her] and put his hand over [her] mouth," telling her "not to say anything."  He then pulled her by the arm back to the shower, where he rinsed the blood off her.  The victim's nose was still bleeding.

The defendant took the victim out of the shower and back to the bedroom, where she crawled over to a chair in the corner of the room.  He struck her in the face with his open hand.  The victim told the defendant if he stopped hurting her and took her to the hospital, she "would lie and tell somebody [she] got jumped."  The defendant walked over to her, put his hands on the victim's cheeks, and said, "[Y]ou're not leaving this room.  I'm going to kill you."  Believing that she was unable to escape, the victim "got down on [her] hands and knees," said that she was sorry, and asked the defendant to stop.  The defendant punched her twice in the face, so hard that she lost her balance.  Photographs introduced at trial showed the victim's blood in multiple areas of the shower, on the mirror and hair dryer, and the bathroom wall.  Photographs also showed injuries to the victim's hips, shoulder, ears, eye, cheek, lips, leg, elbow, and hand.  We conclude that a rational trier of fact, viewing all of this evidence and all reasonable inferences from it in the light most favorable to the State, could have found, beyond a reasonable doubt, that the defendant's conduct manifested extreme indifference to the value of human life.  See id. at 713.

The defendant next asserts that the trial court erred by granting the State's motion to exclude the testimony of a witness whom the defense disclosed to the State several days after the deadline for doing so.  See N.H. R. Crim. P. 12(b)(4)(B).  New Hampshire Criminal Rule of Procedure 12(b)(4)(B) requires a defendant to provide the State with a witness list and witness

2

statements "[n]ot later than ten calendar days before the final pretrial conference." The rule authorizes the trial court to "take such action as it deems just under the circumstances" for a defendant's failure to comply "including, but not limited to . . . prohibiting the [defendant] from introducing the evidence not disclosed." N.H. R. Crim. P. 12(b)(4)(B).

The final pretrial conference in this case was held on September 12, 2019. Under Rule 12(b)(4)(B), therefore, the defendant's witness list and witness statements were due on September 2. The witness was interviewed by an investigator in the afternoon of September 12, and, according to the defendant, later that day, defense counsel orally notified the prosecutor that the interview had taken place. The defendant avers that on September 14, defense counsel sent the prosecutor an email with the witness's name and date of birth and some "basic information" about her statement. The defendant did not provide the State with a copy of the statement until September 16, and did not file an amended witness list with the court until September 18.

According to the report of a September 12, 2019 interview of the witness, the witness claimed that on August 26, 2018, she and the victim fought, and she "definitely hit" the victim "in her face." The witness told the investigator that she "had [the victim] by the hair with one hand and she was 'just swinging' with her other hand."

The State moved to exclude the witness's testimony on the ground that the defendant had failed to comply with Rule 12(b)(4)(B). Following a hearing, the trial court granted the State's motion. The trial court observed that the defendant offered "no rationale for his failure to timely disclose the witness," even though he "not only had the means to contact [her] and identify her as a witness," but "he also knew the full content and evidentiary value of [her] testimony over a year before his disclosure to the State." The court also noted that the defendant made "no assertion that the investigator" who spoke with the witness "had any trouble finding or reaching her," which suggests "that any delay was caused by something other than an inability to obtain a statement by the witness." Moreover, the trial court questioned the reliability of the witness's statement given that during the numerous jailhouse calls between the defendant and the witness, neither he nor the witness mentioned her alleged interaction with the victim on the night in question and that neither he nor the witness ever mentioned the interaction to the police.

After considering the totality of the circumstances, the court found that excluding the witness's testimony was "the only appropriate remedy" for the defendant's discovery violation. The court found that the "eleventh-hour disclosure" of the witness prejudiced the State's ability to present its case to the factfinder and was "exactly the type of conduct that the rules of criminal procedure were designed to prevent."

The defendant challenges the trial court's decision. We generally accord considerable deference to a trial court's ruling on a discovery sanction and will affirm its ruling absent an unsustainable exercise of discretion. State v. Reader, 160 N.H. 664, 667 (2010). To establish an unsustainable exercise of discretion, the defendant must demonstrate that the trial court's decision was clearly unreasonable and that the decision prejudiced his case. Id. Having reviewed the record in this case, we conclude that the defendant has failed to demonstrate that the trial court's ruling was unsustainable.

"We have long recognized that justice is best served by a system that reduces surprise at trial by giving both parties the maximum amount of information." State v. Cromlish, 146 N.H. 277, 280 (2001). "The discovery of truth in criminal proceedings should not suffer by an overly technical application of a scheduling order or the rules of court." Id. "These considerations, however, do not deprive a trial court of the discretion to refuse to admit evidence for a defendant's unexcused failure to meet clear and reasonable deadlines." Id.

"In determining whether evidence should be excluded for a violation of discovery rules, the trial court may consider several factors, including: whether the violating party made a good faith effort to comply or provided a pre-trial warning to minimize surprise; the ability of the court to limit the scope of testimony or evidence to minimize surprise; and the availability of lesser sanctions or procedural curative measures." Id. at 281 (citations omitted). "The judge should also factor into the mix the nature of the explanation given for the party's failure seasonably to abide by the discovery rule, the willfulness vel non of the violation, the relative simplicity of compliance, and whether or not some unfair tactical advantage has been sought." Id. at 284 (quotation omitted).

The defendant contends that "[s]everal considerations combine to support the conclusion that, in excluding [the witness's] testimony, the court unsustainably exercised its discretion." He first asserts that "the fact that [he] relied on his constitutional right to present exculpatory evidence must weigh in the analysis." Relatedly, he argues that the witness's "testimony, if believed by the fact-finder, would have constituted powerful exculpatory evidence."

We disagree with the premise of these arguments — that the witness's testimony constituted "powerful exculpatory evidence." To the contrary, as the trial court reasoned when it denied the defendant's motion to compel the State to provide immunity to the witness:

> Even assuming [the witness] credibly testifies to her version of events, her account is neither directly exculpatory nor irreconcilable with the State's case. [The witness]'s alleged assault

4

of [the victim] simply preceded the State's allegations against defendant, it did not replace them. According to the State, defendant and [the victim] still traveled to the Super 8 hotel together, where they engaged in an altercation that prompted hotel staff to call the police. Police arrived at the hotel and found defendant in a room with [the victim], and defendant resisted arrest. While there was blood on the outside of the hotel room door—which the State could not explain—there was more blood located inside the room. [The victim] also had injuries located all over her body, not just her face. In short, nothing about [witness's] story forecloses the possibility that the defendant also assaulted [the victim] on August 26, 2018.

(Footnote omitted.)

The defendant next contends that because his counsel informed the State about the witness as soon as his counsel was able to do so, this case "does not raise the kind of concern about misuse of delay to achieve a tactical advantage." He argues, therefore, that the trial court should have imposed a lesser sanction for his discovery violation.

Although "[i]t may well be true that alternative sanctions are adequate and appropriate in most cases, . . . it is equally clear that they would be less effective than a preclusion sanction, and that there are instances in which they would perpetuate, rather than limit, the prejudice to the State and the harm to the adversary process." Taylor v. Illinois, 484 U.S. 400, 413(1988). When, as in this case, a defense witness has not been identified "until after the 11th hour has passed," with no explanation, it is "reasonable to presume that there is something suspect" about the witness and "entirely appropriate to exclude the tainted evidence regardless of whether other sanctions would also be merited." Id. at 414.

Here, the trial court reasoned that the defendant's failure to disclose the witness for more than a year, combined with the investigator's ability to find and communicate with her as well as the questions regarding the reliability of her testimony, suggested that the delay "was caused by something other than an inability to obtain a statement by the witness." As the trial court stated, the defendant's "eleventh-hour disclosure of [the witness] . . . is exactly the type of conduct that the rules of criminal procedure were designed to prevent." Accordingly, the trial court's refusal to impose a lesser sanction was not an unsustainable exercise of discretion. For all of the above reasons, we conclude

that the trial court did not unsustainably exercise its discretion by granting the State's motion to exclude the witness's testimony.

Affirmed.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**
